The relief described hereinbelow is SO ORDERED.

SIGNED this 5th day of April, 2022.




Robert D. Berger
United States Bankruptcy Judge

___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VITA CRAFT CORPORATION, | ) | Case No. 19-22358 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

### ORDER CONFIRMING VITA CRAFT CORPORATION'S
### SECOND AMENDED PLAN OF REORGANIZATION

This matter came before the Court on November 1 and 2, 2021 (the "Confirmation Hearing") to consider confirmation of Vita Craft Corporation's ("Vita Craft" or the "Debtor") Second Amended Plan of Reorganization Dated August 6, 2021 (as may be modified pursuant to the Confirmation Order, the "Plan") [Doc. 227].[1]  Robert J. Haupt, William J. Maloney, and Stephen K. Dexter appeared on behalf of Vita Craft.  Thomas J. Fritzlen and Pamela R. Putnam appeared on behalf of secured creditor BMO Harris Bank ("BMO").  Christopher T. Borniger appeared on behalf of the U.S. Trustee.  Having reviewed the Plan, Vita Craft's Plan Ballot

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Plan.

1

Summary ("Ballot Summary") [Doc. 199], BMO's Objection to the Plan [Doc. 238], the arguments and evidence received at the Confirmation Hearing, and being fully advised in the premises, the Court finds good cause exists to confirm the Plan and hereby enters this Order confirming the Plan and makes the following findings of fact and conclusions of law in support thereof:

1. **Findings and Conclusions.** The findings and conclusions set forth herein and in this Court's Order Overruling Objection to Plan Confirmation ("Order") [Doc. 263] constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as made applicable herein by Fed. R. Bankr. R. 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2. **Jurisdiction, Venue, Core Proceeding**. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.

3. **Notice**. Any person or entity required to receive notice of the Confirmation Hearing has received due, proper, and adequate notice thereof. All parties-in-interest had the opportunity to appear and be heard at the Hearing.

4. **Disclosure Statement Adequate Information - § 1125**. The Disclosure Statement contains adequate information as required under 11 U.S.C. § 1125.

5. **Bankruptcy Code and Proponent Compliance - §§ 1129(a)(1) and (2) of the Bankruptcy Code.** The Plan complies, and the Debtor has complied, with the applicable

2

provisions of the Bankruptcy Code, including, without limitation, §§ 1122, 1123, 1125 and 1126 of the Bankruptcy Code.

6.      **Proposed In Good Faith - § 1129(a)(3) of the Bankruptcy Code.** The Plan has been proposed in good faith and not by any means forbidden by law. The Debtor has been advised by counsel of their own choosing in (a) the formulation of the Plan, and (b) the negotiation, execution and delivery of the Plan, and the Disclosure Statement, and all other documents related thereto and to be executed in conjunction with the Plan. Therefore, the Plan satisfies § 1129(a)(3) of the Bankruptcy Code.

7.      **Payments - § 1129(a)(4) of the Bankruptcy Code.** Any payments made or to be made by the Debtors in connection with the Plan have been, and hereby are, approved by the Court as reasonable. Therefore, the Plan satisfies § 1129(a)(4) of the Bankruptcy Code.

8.      **Disclosure - §§ 1129(a)(5) and (6) of the Bankruptcy Code.** The Debtors have complied with and satisfied the requirements of §§ 1129(a)(5) and (6) of the Bankruptcy Code.

9.      **Best Interest of Creditors - § 1129(a)(7) of the Bankruptcy Code.** With respect to each impaired class of Claims (Classes 3A, 3B, 3C, and 4), each holder of a Claim of such class has accepted the Plan. Classes 1A, 1B, 2A, 2B, and 2C are unimpaired and are deemed to have accepted the Plan. In any event, the Plan provides that each holder of a Claim will receive or retain under the Plan on account of its Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Case were converted to chapter 7, and the Estate were liquidated by a chapter 7 trustee. Further, BMO elected to have its claim treated as if fully secured under § 1111(b) of the Bankruptcy Code. Consequently, it will receive or retain under the Plan on account of its Claims property of a value, as of the Effective

3

Date, that is not less than the value of BMO's interest in the estate's interest in the property securing its Claims. Therefore, the Plan satisfies § 1129(a)(7) of the Bankruptcy Code.

**10. Compliance with § 1129(a)(9) of the Bankruptcy Code.** Absent an agreement by a claim holder to be treated differently, § 1129(a)(9) of the Bankruptcy Code mandates specific treatment for administrative expenses. Administrative expenses in this case consist of unpaid pre-petition property taxes assessed by Johnson County, Kansas, unpaid post-petition property taxes assessed by Johnson County, and other administrative expenses incurred by the Debtor in the ordinary course of business. The treatment to be provided to Johnson County for the unpaid pre and post-petition taxes is described below. All other allowed or undisputed administrative expenses incurred by Debtor have been, or will be, paid in the ordinary course of business.

    **a. Treatment of Johnson County Post-Petition Property Taxes.** Pursuant to § 1129(a)(9)(A), except to the extent that the holder of a particular Claim has agreed otherwise, the Plan provides that Claims of a kind specified in § 507(a)(2), which includes post-petition taxes incurred by the estate, will receive on account of such Claim cash equal to the allowed amount of such Claim. If such a claim is disputed or has not otherwise been determined on the Effective Date, the holder of each such Claim will receive on account of such Claim cash equal to the allowed amount of such Claim upon entry of a final non-appealable order granting such claim.

The only post-petition taxes that Debtor has not paid in the ordinary course of business are ad valorum taxes on real and personal property assessed by Johnson County for the years 2020 and 2021. The Debtor has disputed the tax assessments pursuant to 11 U.S.C. § 505 by way of an adversary proceeding styled <u>Vita Craft Corporation v. The Board of Commissioners of Johnson County, Kansas</u>, Case No.22-06002 in the United

States Bankruptcy Court for the District of Kansas (the "Tax Litigation"). Because the tax liability of the Debtor has not been determined as of the Effective Date, the administrative claims arising from the unpaid taxes shall be paid in full once a final, unappealable judgment has been entered establishing Debtor's tax liability. Therefore, the Plan satisfies § 1129(a)(9)(A) of the Bankruptcy Code.

**b.     Treatment of Johnson County Pre-Petition Tax Claims (Classes 1A and 1B)**. The treatment of the Johnson County Pre-Petition Tax Claims shall be in accordance with that set forth in the Plan, which is as follows:

**Class 1A:** This class consists of a Claim for ad valorum real estate taxes assessed by Johnson County for 2019. The Class 1A Claim, which totals $54,437.77, shall bear interest at the rate of 6% per annum and shall be paid in monthly installments in an amount sufficient to pay it and accrued interest in equal payments over a period not to exceed 5 years after the Effective Date. The holder of this Claim shall retain its statutory lien on the real property of the Debtor. The foregoing shall constitute full satisfaction of the Claim in this class. The Debtor has challenged the tax assessments pursuant to 11 U.S.C. § 505 by way of the Tax Litigation. In the event Debtor prevails in the Tax Litigation and obtains a reduction in the assessed value of its real property and a consequential reduction in the taxes due, the total payments to this class will be reduced accordingly.

**Class 1B:** This class consists of a Claim for personal property taxes assessed by Johnson County for 2019. The Class 1B Claim, which totals $26,222.47, shall bear interest at the rate of 6% per annum and shall be paid in monthly installments in an amount sufficient to pay it and accrued interest in equal payments over a

5

Case 19-22358    Doc# 265    Filed 04/05/22    Page 5 of 17

period not to exceed 5 years after the Effective Date. The holder of this Claim shall retain its statutory lien on the personal property of the Debtor. The foregoing shall constitute full satisfaction of the Claim in this class. The Debtor has challenged the tax assessments pursuant to 11 U.S.C. § 505 by way of the Tax Litigation. In the event Debtor prevails in the Tax Litigation and obtains a reduction in the assessed value of its real property and a consequential reduction in the taxes due, the total payments to this class will be reduced accordingly.

11. **Treatment of BMO Harris Claims (Classes 2A, 2B and 2C).** BMO's total claim on the Petition Date was $2,463,332.65. During the Bankruptcy Case, BMO received principal payments of $31,251.00 which effectively reduced the amount of its claim to $2,432,081.65 as of the date of the Confirmation Hearing. The treatment called for under the Plan for the claims of BMO (Classes 2A, 2B and 2C) is amended as follows to reflect the valuations set forth in the Order and an increase in the 30-day LIBOR rate which has occurred since the submission of the Plan.

**Class 2A:** The BMO Land Claim in this class is secured by the Debtor's Land. This Claim shall bear interest at its contract interest rate which is the current 30-day LIBOR index rate plus 300 basis points, calculated at the first day of the month preceding the confirmation of this Plan. On the Plan Confirmation Date, the fair market and replacement value of this Secured Claim is projected to be $488,000, as established by the Order. The Class 2A Claim shall be paid in monthly installments based on an amortization of the outstanding principal amount of $488,000 over 30 years. Debtor anticipates the 30-day LIBOR index rate will be at or below the current contract rate of 3.45%. The thirty-year interest rate shall be fixed as of the Effective Date for the entire thirty-year payment term. At an annual rate of 3.45 percent, the monthly payment will be $2,177.74. The foregoing shall constitute full

6

satisfaction of the Claim in this class. The holder of this Claim is being paid that which it is entitled under § 1111(B) of the Bankruptcy Code.

**Class 2B:** The BMO Building and Equipment Claim is secured by the Debtor's Building and Equipment. Collectively, the Land, Building and Equipment are referred to as the "BMO Collateral." This Claim shall bear interest at its contract interest rate which is the current 30-day LIBOR index rate plus 300 basis points, calculated at the first day of the month preceding the confirmation of this Plan. On the Plan Confirmation Date, the fair market and replacement value of this Secured Claim was established by the Order to be $296,150, based on $100,000 in the real estate apportionment to the building and $196,150 in the value of the equipment of the Debtor. The Class 2B Claim shall be paid in monthly installments based on an amortization of the outstanding principal amount of $2,109.86 over 15 years, which is the estimated useful life of the building and equipment. Debtor anticipates the 30-day LIBOR index rate will be at or below the current contract rate of 3.45%. The fifteen-year interest rate shall be fixed as of the Effective Date for the entire fifteen-year payment term. The foregoing shall constitute full satisfaction of the Claim in this class. The holder of this Claim is being paid that which it is entitled under § 1111(B) of the Bankruptcy Code.

**Class 2C:** The BMO Nominal Value Claim in this class shall not bear interest, in that this is a claim for the remaining balance on the BMO loans, which is $1,647,931.65 and is otherwise entirely unsecured. The Class 2C Claim shall be paid in monthly installments based on equal payment on this Claim over months 61-360 of the Plan term (300 monthly payments) of $5,493.10. The holder of this Claim is being paid that which it is entitled under § 1111(B) of the Bankruptcy Code.

7

12. **Treatment of Claims in Classes 3A, 3B and 3C**

<u>Class 3A</u>: Class 3A, the Convenience Class, and consists of claims totaling $15,067.00 that belong to creditors whose claims either fit into this class or who otherwise elected to become qualified by the voluntary reduction of their claims to $1,000. Class 3A creditors will be paid 50% of their Claim on the Plan's effective date.

<u>Class 3B</u>: Class 3B, the Ordinary Unsecured Creditors Class, consists of claims totaling $168,295.00. Class 3B creditors will be paid 25% of their Claim over 60 monthly payments.

<u>Class 3C</u>: Class 3C, the Prior Wage Class, consists of claims held by former and current employees for vacation time in the amount of $32,446.16. Class 3C creditors will be paid 50% of their Claim over 60 months.

A summary of Plan payments as scheduled is attached as Exhibit A.

13. **Treatment of Equity Holder (Class 4):** Debtor's sole shareholder is Imura International, Inc. Mamoru Imura ("Mr. Imura") is the sole shareholder of Imura International and Debtor's chief executive officer. Within three business days after the Effective Date, Mr. Imura, personally or by way of a third-party, shall infuse a minimum of $600,000 into the Debtor. Within three business days of the Effective Date, Imura International shall assign all its shares in Debtor to Mr. Imura or his assignee.

14. **Commencement of Plan Payments.** The payments to claimants provided for under the Plan shall commence no later than 60 days after the Effective Date, rather than the 90 days set forth in the Plan.

15. **Opportunity To Vote; Acceptance by Impaired Class - §§ 1129(a)(8) and 1129(a)(10) of the Bankruptcy Code.** All holders of Claims and Equity Interests impaired under

8

the Plan have been given adequate opportunity to vote to accept or reject the Plan. The non-insider holders of allowed Claims in all impaired Classes have voted to accept the Plan within the requirements of § 1126(c) of the Bankruptcy Code. At the Confirmation Hearing, the Debtor had admitted into evidence a voting summary supporting this finding, which summary is adopted and incorporated herein by reference. Each Class under the Plan has either accepted the Plan, or is not impaired under the Plan and therefore, the Plan satisfies § 1129(a)(8) of the Bankruptcy Code. Additionally, each Class of Claims that is impaired under the Plan has accepted the Plan, determined without including the acceptance of the Plan by any insider of the Debtors holding a Claim in such Class, and therefore, the Plan satisfies § 1129(a)(10) of the Bankruptcy Code.

16. **Feasibility - § 1129(a)(11) of the Bankruptcy Code.** Confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors and therefore, the Plan satisfies § 1129(a)(11) of the Bankruptcy Code.

17. **Payment of Fees - § 1129(a)(12) of the Bankruptcy Code.** All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees and therefore the Plan satisfies Section 1129(a)(12) of the Bankruptcy Code.

18. **Transfers of Property Under the Plan – § 1129(a)(16) of the Bankruptcy Code.** All transfers of property under the Plan will be made in accordance with any applicable provisions of non-bankruptcy law governing the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Therefore, Section 1129(a)(16) is satisfied.

19. **Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), 1129(b), 1129(c), and 1129(d) of the Bankruptcy Code Are Inapplicable.** As there are no retiree benefits to continue, § 1129(a)(13) of the Bankruptcy Code is inapplicable. As there was only one plan filed in the case,

9

§ 1129(c) of the Bankruptcy Code is inapplicable. The Court finds that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and § 1129(d) of the Bankruptcy Code is inapplicable since no party has requested relief thereunder.

20. **Good Faith Solicitation.** The solicitation of acceptances of the Plan by the Debtors was in good faith.

21. **Binding on Proponent and Holders.** The Debtors and all holders of Claims and Interests are bound by the Plan within the meaning of § 1141 of the Bankruptcy Code.

22. **Plan is Fair and Equitable and Complies with Absolute Priority Rule – Section 1129(b) of the Bankruptcy Code.** The Court finds the Plan fully complies with the provisions of § 1129(a) and that § 1129(b) is not applicable. However, even if § 1129(b) were applicable, the Court finds and concludes that it is nonetheless satisfied by the Plan. When applicable, § 1129(b) requires that a plan must not discriminate unfairly and must be fair and equitable with respect to each class of creditors that is impaired by and has not accepted the plan. The Plan does not unfairly discriminate because there is no dissenting Class. In addition, the Plan is fair and equitable with respect to Classes 2A, 2B, and 2C because BMO retains its liens on the BMO Collateral and because BMO will receive deferred cash payments totaling the amount of its Claims and the present value of the BMO Collateral. *See* 11 U.S.C. § 1129(b)(2)(A)(i). In fact, as explained herein, BMO will be paid in full due to its § 1111(b) Election. Accordingly, even if § 1129(b) were applicable, it is satisfied by the Plan

23. **Binding Order.** The provisions of the Plan are binding on the Debtors and all creditors of the Debtors, holders of Equity Interests and any other parties-in-interest, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors,

agents, employees, representatives, attorneys, beneficiaries, guardians and similar officers, or any person claiming through or in the right of any such persons.

24. **Implementation and Transfer Tax Matters**. The Court hereby specifically approves the means for implementation of the Plan as set forth in the Plan, which is incorporated herein by reference, in accordance with § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest or lien, the making or assignment of any lease or sublease, or the making or delivery of any deed, bill of sale, or other instrument of transfer under, in furtherance of, or in connection with the Plan (including, without limitation, all documents and instruments to be executed or delivered in furtherance of the Plan), shall not be subject to, and may not be taxed under any law imposing a stamp tax or similar tax including, but not limited to, and any other recording tax, mortgage recording tax, stamp tax, real estate tax or other similar tax or government assessment.

25. **Acceptance of Documents**. Without in any manner limiting the relief granted pursuant to the preceding decretal paragraph, each and every federal, state and local governmental agency or department or similar unit is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan including, without limitation, documents and instruments for recording in (i) county recording offices necessary to transfer title to, or record or continue liens and encumbrances against, real estate and (ii) county and state offices wherein financing or termination statements under the Uniform Commercial Code are authorized to be filed.

26. **Making of Distributions**. Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed

11

by first class mail on or before the date of distribution provided for in the Plan to the address listed in a notice of change of address given to the Debtor, or listed in such creditor's proof of claim filed in this case, or, if no proof of claim is filed, the last known address of the creditor entitled thereto.

27. **Stay Terminated.** The termination of the automatic stay of § 362(a) of the Bankruptcy Code shall occur on the Effective Date in accordance with the terms of the Plan.

28. **Discharge and Injunction.**

Except as otherwise provided in the Plan or this Order, the Debtor is discharged from all debts as provided for in § 1141(d) of the Bankruptcy Code.

Except as otherwise provided in the Plan or this Order, all persons who have held, hold, or may hold claims against or interests in Vita Craft are permanently enjoined from taking any of the following actions against the Debtor, the estate, and its professionals, their post-petition management and professionals, and any of the respective representatives, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing, or any of their property on account of any such claims or interests; (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; and (D) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

This Order further permanently enjoins the commencement or prosecution by any entity, whether directly, derivativity or otherwise of any claims, obligations, suits, judgments, damages,

12

demands, debtors, rights, causes of action or liabilities released or exculpated pursuant to the Plan, including claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released under the Plan.

For the avoidance of doubt, nothing in the Plan impacts any claim BMO contends that it may have against the Vita Craft loan guarantors, Imura International or Mr. Imura, nor any rights, defenses or claims that Imura International or Mr. Imura may have against BMO.

29. **Effective Date.** The Effective Date shall be the fifteenth day after the Confirmation Date. The Debtor shall file a notice with the Bankruptcy Court when the Effective Date has occurred.

30. **Final Fee Application.** On December 16, 2019, this Court entered its Order Authorizing Monthly Payments to Debtors Counsel for Hourly Fees and Expenses ("Payment Order") [Doc. 33]. The Payment Order required Debtor's counsel to provide a detailed statement of fees and expenses to be provided to the U.S. Trustee. Absent any objection within 14 days, the Debtor was authorized to pay 100 percent of the fees and expenses included in the statement. However, Debtor's counsel was required to hold 10 percent of each payment in trust, pending approval of a final or interim fee application. There have been no interim applications. Debtor's counsel is hereby directed to submit a final fee application within 30 days of the Effective Date.

31. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

(1) To hear and determine any and all objections to the allowance of Claims or Interests.

(2) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

13

(3) To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party, and to hear and determine any and all Claims arising therefrom.

(4) To hear and determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or instituted by the Reorganized Debtor thereafter.

(5) To consider any modifications of the Plan, to remedy any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

(6) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan.

(7) To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor that arose prior to the Petition Date or in connection with the Bankruptcy Case and where the original claim or cause of action is in excess of $50,000.00.

(8) To issue orders in aid of execution of the Plan as contemplated by 11 U.S.C. § 1142.

(9) To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

32. **Effect of Reference to Plan in this Order**. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Order.

33. **Integration of Confirmation Order Provisions**. The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

34. **Executory Contracts and Unexpired Leases**. Pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between the Debtors and any Person shall be deemed accepted by the Debtors unless specifically rejected by Debtors. Unless a counter-party has specifically sought and received a formal cure amount, any such leases or executory contracts shall be deemed to be current and accepted with

14

no cure payment required. All rights in connection with all executory contracts and unexpired leases assumed by the Debtors or entered into after the Petition Date shall vest in the Reorganized Debtors, pursuant to section 1141(b) of the Bankruptcy Code.

35. **Final Order**. This Order is a final Order and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

# # #

Order Prepared By:

Robert J. Haupt
Lathrop GPM, LLP
10851 Mastin Blvd., Building 82, Suite 1000
Overland Park, Kansas 66210-1669
Direct: 816.460.5733
robert.haupt@lathropgpm.com

Attorneys for Debtor

Approved as to Form

Armstrong Teasdale LLP

/s/Pamela R. Putnam
Pamela R. Putnam, Kan. Bar. No. 22894
Armstrong Teasdale LLP
2345 Grand Blvd, Ste 1500
Kansas City, Missouri 64108
816.221.3420 – telephone
816.221.0766 – facsimile
pputnam@atllp.com

Attorneys for BMO Harris Bank

48497311v10

15

# EXHIBIT A

*In Re Vita Craft Corporation*
Bankr. Case No. 19-22358
Bankr. D. Kansas

EXHIBIT A
Summary of Plan Payments

| Class | | | Total Claims | Plan % | Interest Rate | Payment Months | One-time Payment | Monthly Payments | Total Payments |
|---|---|---|---|---|---|---|---|---|---|
| 1A | Johnson County | 2019 Real Prop Tx | TBD | 100% | 6.00% | 1-60 | TBD | TBD | TBD |
| 1B | Johnson County | 2019 Pers Prop Tx | TBD | 100% | 6.00% | 1-60 | TBD | TBD | TBD |
| 2A | BMO (Land) | Secured Debt | $ 488,000.00 | 100% | 3.45% | 1-360 | | $ 2,177.74 | $ 783,986.40 |
| 2B | BMO (Bldg, Equip) | Secured Debt | $ 296,150.00 | 100% | 3.45% | 1-180 | | $ 2,109.86 | $ 379,774.80 |
| 2C | BMO (Other) | Unsecured Debt | $ 1,647,931.65 | 100% | - | 61-360 | | $ 5,493.11 | $ 1,647,931.65 |
| 3A | General | Convenience Class | $ 13,876.59 | 50% | - | 1-time | $ 6,938.30 | | $ 6,938.30 |
| 3B | General | Ordinary Unsecured | $ 153,744.83 | 25% | - | 1-60 | | $ 640.60 | $ 38,436.21 |
| 3C | General | Prior Wages | $ 32,446.15 | 50% | - | 10-60 | | $ 270.38 | $ 16,223.08 |